669 A.2d 954

COMMONWEALTH of Pennsylvania

v.

Kevin WYATT, Appellant.

Superior Court of Pennsylvania.

Submitted July 3, 1995.

Filed Nov. 21, 1995.

Reargument Denied Feb. 1, 1996.

Barnaby Wittels, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

Following his convictions on charges of murder in the first degree, two counts of robbery and criminal conspiracy, appellant asks this court to award him a new trial on grounds that the police violated his constitutional right to legal representation when he confessed to participating in the robbery of Gold Man Jewelry Store during which Mrs. Ju Yang Lee was slain. More particularly, appellant contends it was a violation of the Fifth Amendment of the Constitution of the United States for the police to have interrogated him concerning the robbery and murder because, at the time, appellant was incarcerated on *unrelated charges* and was represented by legal counsel in that *unrelated case.* Upon review, we must remand this action for a hearing to permit development of a record which is sufficient for accurately assessing the merits of appellant's claim.

The record reveals the following facts and procedure: On March 19, 1990, appellant and his four co-conspirators, Kecia Ray, Paul Johnson, Tony Bennett and Michael Mayo, together left a bar and drove to 52nd and Walnut Streets in Philadelphia. Appellant, Ray and Bennett went into a nearby Kentucky Fried Chicken Restaurant. Johnson and Mayo entered the Gold Man Jewelry Store for the purpose of pawning a gold chain. The two men left the jewelry store after the salesperson (and, ultimately, victim) Mrs. Ju Yang Lee failed to offer them the desired sum of money, and they went to meet their co-conspirators at the Kentucky Fried Chicken Restaurant.

At the restaurant, Mayo told the others what had transpired at the jewelry store and commented that they "should go back and rob the bitch." They all agreed, and a plan was developed. Specifically, appellant and Bennett would wait in the "get-away" car; appellant would drive; Ray would hold the door to the store so that the robbers could exit the store quickly; Johnson and Mayo would perform the robbery; and Mayo would use Bennett's .38 caliber revolver.

Once inside the store, Mayo jumped over the store counter and held the gun against the hip of Scott Park, a store employee, and shouted, "Don't move." Johnson was just beginning to access the jewelry when he noticed the victim reach under the display counter for a handgun. Johnson then pointed at the victim, and Mayo fired two shots at Mrs. Lee. The first shot struck her in the hip, and as she fell, the second, fatal shot struck her in the shoulder and travelled downward through her body puncturing a lung and a large blood vessel near her heart. Empty-handed, Johnson and Mayo then fled the store, and appellant, Bennett, Johnson and Mayo left in the car, while Ray fled on a public bus. The entire event was captured on video tape by the store's surveillance system.

On March 26, 1990, appellant was arrested and charged with theft of an automobile, and, on May 8, 1990, appellant pleaded guilty to that charge.[1] Appellant was represented by legal counsel in regard to the theft charge and was incarcerated while awaiting sentence. Subsequently, police received information which indicated that appellant had been involved in the robbery/murder. On May 22, 1990, Detective Devlin removed appellant from the detention center and brought him to the homicide unit of the Philadelphia Police Department for questioning. The detective informed appellant of his constitutional rights. *See, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant waived those rights and gave the police a statement implicating himself in the robbery/murder.

---

1. Appellant later withdrew his guilty plea in the theft case.

Prior to trial on the charges *sub judice,* appellant filed a *pro se* motion to suppress his statement. Therein, he alleged that he was improperly brought to the homicide unit for questioning because the police lacked probable cause to believe he was involved in the robbery/murder. He also alleged that he was not given his *Miranda* warnings and, thus, could not voluntarily, knowingly and intelligently waive his constitutional rights.

However, once at the suppression hearing, counsel informed the court that the grounds for suppression were different from those proposed in appellant's motion. Counsel, citing *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), argued that the police violated appellant's Fifth Amendment right to legal counsel when they interrogated appellant since he was represented by counsel, albeit in an unrelated case, at the time of questioning.[2]

The lower court, citing *Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513, (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989), ruled that appellant could voluntarily waive his right to counsel in the present case, even though he was represented by counsel on the unrelated theft charge to which he had pleaded guilty two weeks earlier.

The United States Supreme Court, in *McNeil v. Wisconsin,* 501 U.S. 171, 174–177, 111 S.Ct. 2204, 2207–2208, 115 L.Ed.2d 158 (1991), compared the different constitutional rights to counsel afforded by the Fifth and Sixth Amendments to the Constitution of the United States and discussed when a defendant can voluntarily waive his right to legal counsel, as follows:

**2.** The Commonwealth argues that appellant waived the "right to counsel" argument presented herein because he did not raise the issue in his original suppression motion. We disagree. The lower court permitted appellant to present testimony concerning the motion and permitted both parties to argue the merits of the issue before resolving it in the Commonwealth's favor. Where a defendant raises an issue in a procedurally defective manner and the trial court chooses to overlook that defect and decide the issue on its merits, we will *generally* not apply the waiver doctrine. *Commonwealth v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (1988) (per curiam), *reversing,* 365 Pa.Super. 613, 530 A.2d 480 (1987); *but see, Commonwealth v. Metz,* 534 Pa. 341, 633 A.2d 125 (1993) (failure to apply waiver doctrine is error when appellant does not create a sufficient record on which to make a reasoned decision).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." In *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), we held that "once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective." It is undisputed, and we accept for purposes of the present case, that at the time petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the *West Allis armed robbery,* for which he had been formally charged.

The Sixth Amendment right, however, is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion)). And just as the right is offense-specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense-specific.

"The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities...." *Maine v. Moulton,* 474 U.S. 159, 179–180, 106 S.Ct. 477, 488–489, 88 L.Ed.2d 481 (1985).

"Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.,* at 180, n. 16, 106 S.Ct., at 489, n. 16.

See also *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Because petitioner provided the statements at issue here before his Sixth Amendment right to counsel with respect to the *Caledonia offenses* had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case.

Petitioner relies, however, upon a different "right to counsel," found not in the text of the Sixth Amendment, but in this Court's jurisprudence relating to the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.,* at 475, 86 S.Ct., at 1628.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached "until counsel has been made available to him," 451 U.S., at 484–485, 101 S.Ct., at 1884–1885—which means, we have most recently held, that counsel must be present, *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspects executes a waiver and his statements would be considered voluntary under traditional standards. This is "designed to prevent police from badgering a defendant into

waiving his previously asserted *Miranda* rights," *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990). The *Edwards* rule, moreover, is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

In the case *sub judice*, appellant, on May 8, 1990, pleaded guilty to an unrelated theft charge. He was incarcerated while awaiting sentencing on that theft charge when the police learned of his possible involvement in the robbery of the Gold Man Jewelry Store and the murder of Mrs. Lee. It is undisputed that appellant was represented by legal counsel in the theft action when the police initiated the interrogation in question.

Just as in *McNeil, supra*, it is clear that appellant provided his statement at issue before his Sixth Amendment right to counsel with respect to the *robbery and murder offenses* had been invoked, and, therefore, that right poses no bar to the admission of his statement in this case. However, appellant now argues that he invoked his "non-offense-specific *Miranda–Edwards* right" at the time of his arrest for the *theft offense*, and, consequently, his statement to the police was the product of an impermissible approach by the police and an invalid waiver of his "Fifth Amendment right to counsel."

During his suppression hearing, appellant testified that when he was read his *Miranda* warnings following his arrest on the *theft charge*, he informed the officers that he wanted to remain silent and that he wanted a public defender. N.T., 2/25/92, pp. 121–123. Assuming appellant's self-serving testimony is true, appellant clearly did invoke his "non-offense-specific *Miranda–Edwards* right" as set forth in *McNeil, supra*, and *Roberson, supra*. Thus, police violated appellant's "Fifth Amendment right to counsel" when they interviewed appellant without his counsel being present. Since appellant was represented by counsel in the unrelated theft charge, his

statement is considered involuntary and, therefore, inadmissible, even though appellant executed a waiver of his *Miranda* rights and his statement would be considered voluntary under traditional standards. *McNeil, supra.*[3]

However, appellant cannot prevail upon the current record. As we previously noted, appellant raised this issue for the first time orally at the suppression hearing, and the Commonwealth objected to appellant's presentation of the issue. Further, the Commonwealth specifically requested an opportunity to present evidence concerning whether appellant did, in fact, assert his *Miranda* rights at the time of his arrest for automobile theft. N.T., 2/25/92, p. 131. However, the Commonwealth did not pursue this request in light of the lower court's ruling in its favor. Thus, before we rule upon the merits of appellant's asserted violation of his "non-offense-specific *Miranda–Edwards* right [to counsel]", we deem it necessary to permit the Commonwealth an opportunity to present testimony as to this issue.

As previously stated, the lower court rejected appellant's argument based upon our Supreme Court's decision in *Yarris, supra.* Thus, we will now consider the continuing validity of *Yarris, supra,* in light of the United States Supreme Court's decision in *McNeil, supra.* Therein, Yarris was imprisoned on unrelated charges when he initiated conversations with the police and prison officials about an unsolved rape and murder. On January 12, 1982, in the first of several police-initiated interviews, appellant gave a self-exculpatory statement, and police did not attempt to elicit incriminating statements. In a second police-initiated interrogation on January 27, 1982, ap-

---

3. We do not think it is relevant that appellant had already pleaded guilty to the theft charge at the time the police interrogated appellant concerning his involvement in the robbery and murder before us. Appellant had not yet been sentenced. Further, although there is no absolute right to withdraw one's guilty plea, appellant could have filed a motion to withdraw his plea which for "any fair or just reason" should have been granted. *Commonwealth v. Myers*, 434 Pa.Super. 221, 642 A.2d 1103 (1994); *Commonwealth v. Turiano*, 411 Pa.Super. 391, 601 A.2d 846 (1992), *appeal denied*, 531 Pa. 654, 613 A.2d 559. Thus, there was no final order in appellant's case which would have served to divest him of his right to counsel.

pellant waived his *Miranda* rights and repudiated his earlier statements. On February 1, 1982, appellant contacted the police and admitted participating in the rape and murder. Later, police contacted appellant and informed him of his *Miranda* rights. During the police-initiated interrogation, Yarris waived his right to counsel and again admitted his participation in the rape and murder.

Our high court ruled that a suspect's right to counsel only applied in those interviews which were initiated by the police, *Yarris*, 549 A.2d at 523, and, then, those rights could be validly waived. *Yarris*, 549 A.2d at 524. The Court made no determination whether appellant had asserted his "Fifth Amendment right to counsel" in the unrelated case. Instead, the Court specifically stated:

> We emphatically decline to add such a condition [i.e., counsel's presence at the initiation of the interrogation] to the validation of a suspect's waiver of the right to counsel prior to a custodial interrogation. The fact that he is represented by an attorney in connection with unrelated charges may be a factor to evaluate in determining voluntariness of a *Miranda* waiver under the totality of the circumstances, but we do not hold that a suspect loses his competency to waive his right to counsel as soon as he obtains representation in an unrelated case.

*Yarris*, 549 A.2d at 524.

We note that the holding is in direct conflict with *McNeil, supra,* in situations where a defendant has asserted his "Fifth Amendment right to counsel" in an unrelated case and is then subjected to a police-initiated interrogation out of counsel's presence. Of course, at the time *Yarris, supra,* was written our Supreme Court was without guidance from *McNeil, supra.* Since that time, however, our Supreme Court has approvingly applied the holding of *McNeil, supra,* in the case of *Commonwealth v. Santiago*, 528 Pa. 516, 599 A.2d 200 (1991).

Unfortunately, the lower court *sub judice* made no determination whether appellant asserted his "non-offense-specific *Miranda–Edwards* right" at the time of his arrest on theft

charge. Rather, the court summarily rejected appellant's argument based upon *Yarris, supra.* N.T., 2/25/95, pp. 152–153.[4] Accordingly, we remand this case for a hearing on the issue of whether appellant did assert his "non-offense-specific *Miranda–Edwards* right to counsel" at the time of his arrest and incarceration on the unrelated automobile theft charge. If the court finds that appellant did assert such a right, then appellant must be awarded a new trial.[5]

Case remanded for a hearing in accordance with the provisions of this opinion. Jurisdiction retained.

4.  We note that the lower court judge in this case, the Honorable Juanita Kidd Stout, was a Justice of the Supreme Court of Pennsylvania when *Yarris, supra,* was decided.

5.  Appellant also alleges that the lower court erred in permitting the video tape of the murder to be shown during his trial. We will not address this issue at this time, given the fact that appellant could be awarded a new trial. Should the lower court find appellant is not entitled to a new trial, we will then entertain appellant's challenge to the video tape evidence.