688 A.2d 710

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kevin WYATT, Appellant.**

Superior Court of Pennsylvania.

Submitted July 3, 1995.

Filed Jan. 8, 1997.

Reargument Denied Feb. 25, 1997.

Barnaby Wittels, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following appellant's convictions on charges of murder in the first degree, two counts of robbery and criminal conspiracy. Herein, appellant asks this court to award him a new trial on grounds that the police violated his constitutional right to legal representation when he confessed to participating in the robbery of Gold Man Jewelry Store during which Mrs. Ju Yang Lee was slain. More particularly, appellant contends it was a violation of the Fifth Amendment of the Constitution of the United States for the police to have interrogated him concerning the robbery and murder because, at the time, appellant was incarcerated on unrelated charges and was represented by legal counsel in that unrelated case. In addition, appellant request a new trial on the grounds that he was prejudiced when the court permitted repetitive showing of the video tape of the murder. Upon review, we affirm.

Initially, we note that on November 21, 1995, we remanded this action for a hearing to determine whether appellant asserted his "non-offense-specific *Miranda–Edwards* right to counsel" at the time of his arrest on unrelated charges. We directed the lower court to suppress his statements and award appellant a new trial if, after a hearing, the evidence established that appellant's "non-offense-specific *Miranda–Edwards* right to counsel" were in effect at the time he was interrogated about the murder of Ju Yang Lee in the Gold Man Jewelry Store. *See, Commonwealth v. Wyatt,* 447 Pa.Super. 393, 669 A.2d 954 (1995), *reargument denied, applying McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

On April 17, 1996, as directed by this court, a hearing was held before the Honorable Juanita Kidd Stout who was the trial judge in this case. Judge Stout, in her opinion of September 26, 1996, set forth the following facts:

... At the hearing, Detective Kelly testified that he sought to interrogate appellant about the [unrelated] auto theft on the day of his arrest, March 25, 1990. He began the interview by reading the warnings and questions listed on the Miranda warnings. When he reached question number 3, Do you wish to remain silent?, appellant answered in the affirmative and Detective Kelly terminated the interview. Specifically, he did not ask any of the other questions relative to appellant wanting an attorney. There was no further communication between appellant and Detective Kelly concerning the auto theft case.

Appellant was released from custody on April 8, 1990, two weeks after the arrest and attempted interview of March 25th. Thereafter, on May 2, 1990, he was arrested for failing to appear for a drug case which had been listed on April 23, 1990.

While incarcerated as a result of the May 2nd arrest, appellant pled guilty to the auto theft case on May 8, 1990. Appellant was represented by counsel and sentencing was deferred.

On May 22, 1990, while still in custody and represented by counsel, appellant was taken to the Homicide Unit and interrogated by Detective Devlin concerning the robbery/murder of Ju Lee Yang which occurred on March 19, 1990 at the Gold Man Jewelry Store. After receiving the *Miranda* warnings and waiving the same, appellant, in the absence of counsel, confessed to his participation in the robbery/murder.

Opinion, 9/26/96, pp. 2–3.

Based on those facts, the lower court found "that appellant did not assert his 'non-offense-specific *Miranda–Edwards* right to counsel' at the time of his arrest and incarceration on the unrelated auto theft charge." Opinion, 9/26/96, p. 4. However, we must disagree with this conclusion of the court below. It is undisputed that at the time of his arrest on theft charges, appellant asserted his right to remain silent and further interrogation ceased. Consequently, in an abundance of caution, we find that appellant did assert his non-offense-specific *Miranda–Edwards* right to counsel at the time of his arrest. *See, Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ However, the fact that appellant asserted his *Miranda* rights at the time of his arrest on unrelated charges does not end our inquiry. We must further determine whether the record reveals his assertion of those rights remained in effect at the time of his interrogation on the charges *sub judice.* As the Commonwealth points out, appellant was released from custody on the theft charges on April 8, 1990, and was not reincarcerated until almost a month later when on May 2, 1990, when he was arrested for failing to appear before the court on drug charges. Thus, at the time of the interrogation *sub judice,* appellant had not been in continuous custody since his assertion of his right to counsel.

In *McNeil,* 501 U.S. at 176–77, 111 S.Ct. at 2208, the United States Supreme Court intimated that a suspect must be in

continuous custody for his non-offense-specific *Miranda–Edwards* rights to remain in effect, when the high court stated:

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached "until counsel has been made available to him," 451 U.S., at 484–485, 101 S.Ct., at 1884–1885—which means, we have most recently held, that counsel must be present, *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). If the police do subsequently initiate an encounter in the absence of counsel *(assuming there has been no break in custody)*, the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspects executes a waiver and his statements would be considered voluntary under traditional standards. This is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990). The *Edwards* rule, moreover, is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). (Emphasis added).

Although the United States Supreme Court has not spoken definitively on the question of whether a break in custody eliminates the need for the protections of the *Miranda–Edwards* prophylactic rule, the court's holding in *McNeil, supra*, certainly implies that continuous custody is a requirement for the application of the rule.

Indeed, various circuits of the Federal Court of Appeals have held that if, after invoking one's Fifth Amendment right to counsel, a suspect is released from custody, then the concerns that prompted the *Miranda–Edwards* prophylactic rule are sufficiently minimized such that any violation of the Fifth Amendment right to counsel allegedly founded upon

those prior request for counsel simply dissolves. *United States v. Barlow,* 41 F.3d 935, 945–946 (5th Cir.1994); *Dunkins v. Thigpen,* 854 F.2d 394, 397 (11th Cir.1988) ("a break in custody dissolves a defendant's *Edwards* claim"), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); *United States v. Hines,* 963 F.2d 255, 257 (9th Cir.1992) ("*Edwards* rule does not apply to suspects who are not in continuous custody between the time they request counsel and the time they are reinterviewed"); *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 125 (7th Cir.1987), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) (same); *United States v. Skinner,* 667 F.2d 1306, 1309 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983) (same); *McFadden v. Garraghty,* 820 F.2d 654, 661 (4th Cir.1987) (same).

In other words, once a suspect is released from police custody, he is no longer subject of the inherently compelling pressures of custodial interrogation and his Fifth Amendment rights which the *Miranda–Edwards* prophylactic rule was designed to protect are no longer in jeopardy. Certainly, the suspect who is free from police custody has a substantial opportunity to consult with an attorney before any further contact with the police.

We are in agreement with the federal circuits and hold that if a suspect is released from custody after assertion of his Fifth Amendment right to counsel and has had a reasonable opportunity to contact his attorney, the *Miranda–Edwards* prophylactic rule, as applied in *McNeil, supra,* does not bar the admission of any subsequent statements of the suspect, provided he has otherwise validly waived his right to counsel.[1]

1. Although the courts of this Commonwealth have not expressly ruled upon the requirement of continuous custody, we note that in *Commonwealth v. Santiago,* 528 Pa. 516, 599 A.2d 200 (1991), when our Supreme Court first applied *McNeil, supra,* it specifically noted that the defendant had been in continuous custody from his initial assertion of his Fifth Amendment right to counsel. 599 A.2d at 203 n. 10. Thus, our decision today is factually consistent with our high court's prior application of *McNeil, supra.*

In sum, we find that appellant's statements were admissible at his trial. Although appellant had asserted his non-offense-specific Fifth Amendment right to counsel when in custody on automobile theft charges, he was released from prison for almost a month before his arrest for failing to appear on drug charges. Clearly, appellant had a substantial opportunity to consult with counsel during his release, and he was quite free of the coercive effects of custodial interrogation. Simply put, his *Miranda–Edwards* non-offense-specific right to counsel dissolved upon his initial release from custody, and appellant was free to waive voluntarily that right without counsel's presence at a later date.[2]

We turn now to appellant's second assertion of error that he was prejudiced when the court permitted the jury to view the video tape of the murder three times. To clarify, we restate the facts as set forth in our prior *Wyatt* decision:

> ... On March 19, 1990, appellant and his four co-conspirators, Kecia Ray, Paul Johnson, Tony Bennett and Michael Mayo, together left a bar and drove to 52nd and Walnut Streets in Philadelphia. Appellant, Ray and Bennett went into a nearby Kentucky Fried Chicken Restaurant. Johnson and Mayo entered the Gold Man Jewelry Store for the purpose of pawning a gold chain. The two men left the jewelry store after the salesperson (and, ultimately, victim) Mrs. Ju Yang Lee failed to offer them the desired sum of money, and they went to meet their co-conspirators at the Kentucky Fried Chicken Restaurant.
>
> At the restaurant, Mayo told the others what had transpired at the jewelry store and commented that they "should go back and rob the bitch." They all agreed, and a plan was developed. Specifically, appellant and Bennett would wait in the "get-away" car; appellant would drive; Ray would hold the door to the store so that the robbers could exit the store quickly; Johnson and Mayo would

---

2. Other that the allegation addressed *infra,* appellant has not challenged the validity of his waiver of his *Miranda* rights at time when he was interrogated by Detective Devlin on May 22, 1990, concerning the murder of Ju Yang Lee.

perform the robbery; and Mayo would use Bennett's .38 caliber revolver.

Once inside the store, Mayo jumped over the store counter and held the gun against the hip of Scott Park, a store employee, and shouted, "Don't move." Johnson was just beginning to access the jewelry when he noticed the victim reach under the display counter for a handgun. Johnson then pointed at the victim, and Mayo fired two shots at Mrs. Lee. The first shot struck her in the hip, and as she fell, the second, fatal shot struck her in the shoulder and travelled downward through her body puncturing a lung and a large blood vessel near her heart. Empty-handed, Johnson and Mayo then fled the store, and appellant, Bennett, Johnson and Mayo left in the car, while Ray fled on a public bus. Unfortunately for the co-conspirators, the entire event was captured on video tape by the store's surveillance system.

*Wyatt,* 669 A.2d at 955.

Herein, appellant admits that "one showing of the tape, despite its unpleasant contents, was proper and defense objections were properly overruled." Appellant's brief, p. 10, However, appellant baldly suggest that "the playing and playing and playing of the tragic death of another human being made the guilty verdict a foregone conclusion as the jury was guided more by the visceral reaction to the death other than a careful, objective reflection on the evidence." Appellant's brief, p. 10.

 Upon review, we agree with the lower court's resolution of appellant's claim and set forth the court's reasoning *in toto:*

"The decision to admit or exclude evidence is within the discretion of the trial court, and will not be reversed absent an abuse of that discretion. (cit. om.). 'Reversal based on the exclusion of evidence requires a showing of abuse of discretion as well as a showing of actual prejudice.'" *Commonwealth v. Franklin,* 397 Pa.Super. 265, 580 A.2d 25 (1990), appeal denied 527 Pa. 641, 593 A.2d 415 (1991). [Appellant] conceded that the evidence was probative. This

Court restricted the use of the tape and even gave a cautionary instruction to protect the [appellant] against any possible prejudice. [Appellant] has not shown that he was prejudiced by the repeated playing of the tape. Other than his continued argument that what is depicted on the tape is so ghastly that one is emotionally overwhelmed, there is nothing in this record to support his claim of prejudice. As previously noted, the jury found the tape to be relevant and certainly not so unnerving since they asked to see it again during deliberations. See *Commonwealth v. Stark,* 363 Pa.Super. 356, 526 A.2d 383 (1987), appeal denied 517 Pa. 622, 538 A.2d 876 (1988): (videotape, although damaging to defendant's theory of defense, was not of a type that would inflame the jury or distract it from the totality of the evidence offered by the parties).

Trial Court Opinion, 9/24/93, pp. 5–6.

█ Further, appellant has waived this argument because he has neglected to insure that a copy of the video tape was included in the record. Consequently, we are unable to view the tape, assess its prejudicial effect, and determine whether the lower court abused its discretion in permitting the tape to be shown three times to the jury. *Cf., Commonwealth v. Leighow,* 413 Pa.Super. 372, 605 A.2d 405 (1992), appeal denied, 532 Pa. 642, 614 A.2d 1140 (defendant waived attack on *voir dire* testimony where defendant failed to include transcript of *voir dire* in record); *Commonwealth v. Patterson,* 392 Pa.Super. 331, 572 A.2d 1258 (1990), appeal denied 527 Pa. 631, 592 A.2d 1299 (defendant waived argument that lower court improperly denied his motion for a change of venue where evidence of pretrial publicity was not included in official record); *Commonwealth v. Osellanie,* 408 Pa.Super. 472, 597 A.2d 130 (1991).

Judgment of sentence affirmed.