**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Billy R. BOGGS, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1997.

Filed June 4, 1997.

Darrell C. Dethlefs, Camp Hill, for appellant.

Jaime M. Keating, Asst. Dist. Atty., Carlisle, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and POPOVICH and HESTER, JJ.

POPOVICH, Judge:

In this appeal, we are asked to determine whether appellant's incriminating statements made to a police officer posing as an attorney should have been suppressed. Appellant contends that his statements were improperly admitted at trial since he was not advised of his *Miranda*[1] warnings prior to his conversation with the officer, he was deprived of his right to counsel, and the statements were confidential and protected under the attorney-client privilege. We affirm.

Our standard of review in this case is well-settled.

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the

context of the record as a whole, remains contradicted.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992), *alloc. denied,* 533 Pa. 598, 617 A.2d 1273 (1992) (citation omitted). "If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968, 969 (1987) (citation omitted).

The relevant facts in this case are not in dispute, and, after careful review, we are satisfied that the suppression court's factual findings are supported by the record. Accordingly, the pertinent facts are as follows: Appellant was incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania, awaiting trial on theft charges. While in prison, appellant asked another inmate, Daniel Krushinski, whether he knew anyone who could murder the two witnesses who were scheduled to testify against appellant at his trial. Mr. Krushinski later contacted the Pennsylvania State Police and informed Trooper Daniel Wertz of his conversation with appellant. Trooper Wertz told Mr. Krushinski to tell appellant that he would get someone to "take care of the problem." Mr. Krushinski then approached appellant and told him that his cousin, who was an attorney, would come to the prison to discuss appellant's "problem." Trooper Wertz enlisted the aid of Corporal Craig Fenstermacher, who agreed to pose as Mr. Krushinski's cousin and agreed to meet with appellant at the prison.

On April 27, 1995, posing as an attorney, Corporal Fenstermacher met with appellant in a private room at the prison. Upon entering the room, Corporal Fenstermacher introduced himself as Chuck Fry. Appellant indicated that he was having a legal problem involving two witnesses and that he needed to get rid of the witnesses in order to get out of jail. Specifically, appellant indicated that he needed to have the witnesses "eliminated and unable to testify." Corporal Fenstermacher indicated that he could "take care of

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the witnesses" the following weekend. However, appellant indicated that he wanted the problem to be solved immediately. Appellant then gave Corporal Fenstermacher the names and addresses of the witnesses. The two men discussed a payment plan whereby Corporal Fenstermacher was to be paid $2500 by appellant's girlfriend.

After the meeting, Corporal Fenstermacher contacted Trooper Wertz, informed him of the conversation he had with appellant and informed him of the arrangements for payment. Thereafter, Trooper Wertz met with appellant's girlfriend and received $2500. The officers then obtained consent for a bodywire. On May 8, 1995, while wearing a bodywire, Corporal Fenstermacher again posed as an attorney and met with appellant at the prison.[2] During the meeting, appellant gave detailed descriptions of the witnesses, and indicated that "when this is done my attorney will have the charges against me dropped." N.T. 10/30/95 p. 14. The men then discussed the final payment arrangements and the corporal stated that he would "take care of it." Appellant responded that it "sounds good to me." N.T. 10/30/95 p. 16.

After the May 8, 1995, meeting, appellant was summoned to the prison security office, advised of his *Miranda* warnings and placed under arrest by Trooper Wertz. He was charged with attempted murder, criminal conspiracy to commit murder and solicitation to commit murder. Appellant filed a pretrial motion seeking to suppress the statements he made to Corporal Fenstermacher during their two meetings. The lower court denied the motion. Appellant proceeded to a jury trial and was convicted of conspiracy to commit murder and solicitation to commit murder. After appellant was sentenced, he filed this timely appeal.

Appellant first contends that his statements made to Corporal Fenstermacher should have been suppressed since they were the product of an illegal custodial interrogation. In *Miranda v. Arizona, supra,* the

United States Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning.[3] In *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), the Supreme Court applied the dictates of *Miranda* to a situation where an undercover law enforcement officer, posing as a fellow inmate, obtained a confession from a defendant. The defendant objected to the use of his confession at trial because no *Miranda* warnings were given prior to the defendant's conversation with the undercover officer. The Court held that the tactic used to elicit constitutional guarantee against self-incrimination. Specifically, the Court held the following:

> Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody. The warning mandated by *Miranda* was meant to preserve the privilege during incommunicado interrogation of individuals in a police-dominated atmosphere. That atmosphere is said to generate inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.
>
> Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present.... There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess.

*Perkins,* 496 U.S. at 296–97, 110 S.Ct. at 2397 (citations omitted).

---

**2.** Appellant does not challenge the propriety of the bodywire.

**3.** "Appellant makes no claims under the Pennsylvania Constitution. Therefore, we address only the law as mandated by the United States Constitution." *Commonwealth v. Mayhue,* 536 Pa. 271, 639 A.2d 421, 435 n. 11 (1994) (citation omitted).

While we acknowledge that the decision in *Perkins* permitted an undercover officer posing as a fellow inmate to question the defendant without prior *Miranda* warnings, we find the Supreme Court's reasoning applicable to this case where the undercover officer posed as an attorney. As in *Perkins,* appellant was unaware that he was conversing with a police officer when he made the incriminating statements.[4] In this case, he believed that he was conversing with an attorney who was sympathetic to his situation and who was willing to aid him with his "problem." Accordingly, the required "police-dominated atmosphere" and compulsion triggering the need for *Miranda* warnings was not present. *See Perkins, supra* (coercion is determined from the perspective of the suspect). The mere fact that appellant was technically in custody when he conversed with the corporal was not sufficient to require *Miranda* warnings. *Perkins, supra.*

In addition, we find that appellant's statements were given freely and voluntarily and were not extracted by any sort of threat or violence. *Commonwealth v. Lam,* 453 Pa.Super. 497, 684 A.2d 153 (1996) (accused's statements to government informant were made voluntarily). In fact, the record reveals that appellant initiated the encounters with the corporal, that he voluntarily proceeded to the prison's private room to meet with him, that he consented to the corporal's presence and that he voluntarily engaged in the illicit conversation. The mere fact that he had been fooled into thinking that Corporal Fenstermacher was sympathetic to his cause and misplaced his confidence in him did not affect the voluntariness of his statements. *Perkins, supra; Commonwealth v. Haynes,* 395 Pa.Super. 322, 577 A.2d 564, 572 (1990) ("If an [officer] only deceived the accused as to his or her identity and the accused consented to the [officer's] presence, ... the deception does not affect the volun-tariness of the accused's statements."). "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Perkins,* 496 U.S. at 297, 110 S.Ct. at 2397 (citation omitted). *See Commonwealth v. Whiting,* 447 Pa.Super. 35, 668 A.2d 151 (1995) (where appellant made incriminating statements to government informant, no *Miranda* warnings required); *Commonwealth v. Feflie,* 398 Pa.Super. 622, 581 A.2d 636 (1990) (where appellant confessed to prison inmate, no *Miranda* warnings required). Simply put, appellant spoke at his own peril. Accordingly, we find that appellant's statements should not have been suppressed on this basis.

Appellant next contends that the trial court's failure to suppress his statements made to the corporal while he was awaiting trial on theft charges violated his Sixth Amendment right to counsel.[5] In *Perkins, supra,* the Supreme Court reiterated its holding in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), that the government may not use an undercover agent to circumvent the Sixth Amendment right to counsel once a suspect has been charged with the crime. "After charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel." *Perkins,* 496 U.S. at 299, 110 S.Ct. at 2399. However, in *Perkins,* the Court concluded that no charges had been filed on the subject of the interrogation, and, therefore, the Sixth Amendment was not violated. As we observed in *Commonwealth v. Wyatt,* 447 Pa.Super. 393, 669 A.2d 954, 956 (1995), "[t]he Sixth Amendment right is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal

---

4. It should be noted that while posing as an attorney, Corporal Fenstermacher did not carry his badge or gun, and he did not wear an officer's uniform. Rather, he was wearing casual street clothes. *See Perkins, supra* (where undercover agent wore the same "prison gray" as the defendant, there was no interplay between police interrogation and police custody).

5. "The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense." *Commonwealth v. Wyatt,* 447 Pa.Super. 393, 669 A.2d 954 (1995).

charge, preliminary hearing, indictment, information or arraignment." (citing *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). Therefore, where the statements in question concerned a crime for which no charges had been filed against appellant, the admission of the statements at trial do not violate the Sixth Amendment right to counsel. *Mayhue, supra.*

■ It is undisputed, and we accept for purposes of this case, that appellant's Sixth Amendment right had attached and had been invoked with respect to the theft charges. However, the purpose of the corporal's conversations with appellant on April 27, 1995, and May 8, 1995, was to obtain information about an offense for which appellant had yet to be charged, i.e., the attempted murder and solicitation of murder with regard to two witnesses. *See Mayhue, supra* (admission of statements the appellant made to a police informant while he was incarcerated and awaiting trial on unrelated charge did not violate his right to counsel). During the meetings, appellant was not questioned concerning the theft charges. Rather, the conversations involved appellant's desire to have two witnesses "eliminated." At the suppression hearing, Officer Fenstermacher specifically testified that the reason he met with appellant was not to obtain information regarding the theft charges, but was to further investigate appellant's ongoing attempt to "eliminate" the two witnesses. Accordingly, we find that the statements obtained by the corporal through the lawful investigation of a crime for which appellant had not yet been accused were properly admitted and the admission did not violate his Sixth Amendment right to counsel.

Appellant's final contention is that his statements should have been suppressed because they were confidential and protected under the attorney-client privilege. The attorney-client privilege is "the most revered of our common law privileges, and, as it relates to criminal proceedings, it has been codified in this Commonwealth at 42 Pa.C.S. § 5916." *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1333 (1986). Section 5916 provides that "[i]n a criminal proceeding, counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

The generally recited requirements for assertion of the attorney-client privilege are:

(1) The asserted holder of the privilege is or sought to become a client.

(2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

(4) The privilege has been claimed and is not waived by the client.

*Commonwealth v. Mrozek*, 441 Pa.Super. 425, 657 A.2d 997, 998 (1995) (citation omitted).

■ In this case, appellant did not make statements to a person who was a member of the bar or his subordinate. Rather, appellant made incriminating statements to a police officer. However, assuming *arguendo* that the privilege applies since appellant was actively misled to believe that he was conversing with an attorney, the privilege would not protect the statements. Appellant sought the advice and assistance of "the attorney" for the sole purpose of committing a crime, i.e., murder. Accordingly, appellant's incriminating statements were not protected by the attorney-client privilege, and their admission into evidence was not improper on this basis.

For all of the foregoing reasons, we affirm the judgment of sentence.

Affirmed.