J-S34006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM E. RIDENBAUGH | |
| Appellant | No. 981 WDA 2013 |

Appeal from the PCRA Order May 8, 2013
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000166-2006

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                           **FILED JANUARY 14, 2015**

William E. Ridenbaugh appeals from the order entered on May 8, 2013, in the Court of Common Pleas of Clarion County, after a hearing, denying him relief on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*[1] Ridenbaugh claims trial counsel was ineffective for (1) failing to properly advise him on entering a guilty plea; and (2) failing to file a motion to suppress statement made during custodial interrogation. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

---

[1] Ridenbaugh was convicted by a jury of third-degree murder and related offenses. The trial court sentenced him to an aggregate term of 28-56 years' incarceration.

We rely upon the factual statement found in the PCRA court's decision of May 8, 2013. Because the parties are familiar with the facts, we will not reiterate them herein. Rather, we refer to pages two through six of the PCRA court opinion.

Initially, we note:

> Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Heredia*, 97 A.3d 392, 394 (Pa. Super. 2014) (citation omitted).

Additionally,

> [I]n order to obtain relief based on [an ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

> Trial counsel is presumed to be effective, and Appellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

*Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014) (citation omitted). Finally, "[c]ounsel is not ineffective for failing to raise meritless claims." *Commonwealth v. Wright*, 961 A.2d 119, 149 (Pa. 2008).

In Ridenbaugh's first issue, he argues counsel was ineffective for failing to properly advise him on the "risks, hazards and prospects"[2] of his case. Because of this failure, Ridenbaugh claims he refused a negotiated plea offer that would have resulted in the imposition of a 10-20 year term of incarceration. Ridenbaugh specifically argues counsel improperly informed him that if he accepted the offer, he would likely serve all of it. But for this advice, Ridenbaugh claims he would have accepted the terms of the negotiated plea, including the requirement he testify against his co-defendant.

Regarding the circumstances surrounding a guilty plea, Ridenbaugh correctly notes:

> The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But counsel may and must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest. Such persuasion is most often needed to convince the client to plead guilty in a case where a not guilty plea would be totally destructive.

*Commonwealth v. Copeland*, 554 A.2d 54, 60 (Pa. Super. 1988) (citation omitted).

_____

[2] Appellant's Brief at 7.

However, in *Copeland*, trial counsel failed to convey the existence of an offer to his client. That is not the instant situation. The record demonstrates that Ridenbaugh knew of the Commonwealth's plea offers. His claim of ineffective assistance of counsel is that counsel failed to fully discuss the options.

Ridenbaugh is complaining about counsel's failure to discuss a plea offer of 10-20 years' incarceration, however, this claim ignores the fact that the Commonwealth had previously offered him a 7 to 20 year sentence, which counsel recommended he accept, and which Ridenbaugh refused, claiming he did not commit the crime and would not accept any jail time due to his poor health. *See* N.T. PCRA Hearing, 11/21/2012, at 9, 24-28. Additionally trial counsel testified he fully discussed the strengths and weaknesses of the case and gave Ridenbaugh his professional opinion, specifically, because Ridenbaugh had just been convicted of illegal drug and weapons offenses in a different case, he would likely serve the majority of the offered sentence.[3]

_____

[3] Having reviewed the certified record, we see nothing to indicate that the strengths and weaknesses of Ridenbaugh's case changed between the first offer of 7 to 20 years' incarceration and the subsequent offer of 10 to 20 years' incarceration. Moreover, Ridenbaugh has not claimed there was any change in circumstances between the two plea offers. Therefore, any discussions regarding the first plea would be applicable to the second.

Based upon this evidence, the PCRA court determined trial counsel had properly discussed the plea offers with Ridenbaugh and, therefore, Ridenbaugh's decision not to accept the plea was fully informed and not the product of ineffective assistance of counsel. The PCRA court did not abuse its discretion or commit an error of law in denying this claim.

Ridenbaugh's second claim is that trial counsel was ineffective for failing to file a motion to suppress statements made to the police during his August 12, 2005 and September 1, 2005 interviews. Ridenbaugh claims both instances were custodial interrogations. In the first, he argues he was not provided his *Miranda*[4] rights; in the second, he argues he was represented by counsel in a different case and therefore could not validly waive his *Miranda* rights without access to that counsel. Both of these claims fail.

> *Miranda* warnings are only required when a defendant is subject to a custodial interrogation. ***Commonwealth v. Fisher***, 564 Pa. 505, 769 A.2d 1116, 1125 (2001); ***Commonwealth v. Johnson***, 556 Pa. 216, 727 A.2d 1089, 1100 (1999); ***Commonwealth v. Gwynn***, 555 Pa. 86, 723 A.2d 143, 149 (1998); ***Commonwealth v. Jones***, 546 Pa. 161, 683 A.2d 1181, 1188 (1996). A person is in custody for purposes of *Miranda* only when the objective circumstances suggest that she was physically deprived of her freedom or was in a situation where she reasonably could have believed that her freedom of movement was being restricted. ***See Commonwealth v. Gibson***, 553 Pa. 648, 720 A.2d 473, 480 (1998); ***Commonwealth v. Rucci***, 543 Pa. 261, 670 A.2d 1129, 1139

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

(1996). ***See also Stansbury v. California***, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994) (*per curiam*) ("'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest'") (*quoting* ***California v. Beheler***, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)) (further citation omitted). The fact that the officer questioning a person has "focused" on that individual does not in itself prove custody for ***Miranda*** purposes. ***See Minnesota v. Murphy***, 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984); ***Beckwith v. United States***, 425 U.S. 341, 347-48, 96 S.Ct. 1612, 1616-17, 48 L.Ed.2d 1 (1976). Similarly, the fact that the officer subjectively believes that the individual being interviewed is a suspect is irrelevant to the question of custody, if the officer has not communicated the fact to the individual. ***Stansbury***, 511 U.S. at 324, 114 S.Ct. at 1530 ("Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the ***Miranda*** custody inquiry."); ***Gibson***, 720 A.2d at 480 ("[T]he test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.") (*quoting* ***Commonwealth v. Williams***, 539 Pa. 61, 650 A.2d 420, 247 (1994)).

***Commonwealth v. Smith***, 836 A.2d 5, 18 (Pa. 2003).

Regarding the first interview, conducted on August 12, 2005, the PCRA court concluded Ridenbaugh was not subject to a custodial interrogation, and therefore, was not entitled to ***Miranda*** warnings. Our review of the certified record leads us to agree with the PCRA court's determination. The PCRA court opinion states:

Ridenbaugh argues that when he as picked up by Trooper Powell and transported to the Clarion barracks for an interview he was in custody and should have been given his ***Miranda*** warnings.

He points to the fact that he was transported to the barracks by Trooper Powell and had no way of leaving on his own and the total time between when he was picked up and dropped off was over five hours. Ridenbaugh asserts that during the interview, he was detained in a locked interrogation room with multiple officers present.[5] He believes the totality of the circumstances show the interview was so coercive that he was in fact in custody.

Considering the totality of the circumstances, Ridenbaugh is incorrect. Prior to the August 12, 2005 interview, Ridenbaugh, by his own admission, had met voluntarily with police on multiple occasions. On June 5, 2005, one of those voluntary meetings took place at the Clarion barracks.

On August 12, 2005, Trooper Powell was not overly coercive when he picked up Ridenbaugh. He spotted him riding his 4-wheeler down the road and asked him to get in the police car. Ridenbaugh complied. Trooper Powell told him to push the 4-wheeler behind a tree and Ridenbaugh got in the front seat of the police car. He was not handcuffed or touched in any way.

It is not clear exactly how long Ridenbaugh was at the barracks being interviewed, but Trooper Powell testified he was not interviewed for the entire five hours. During the interview, both the troopers and Ridenbaugh agreed that one of the main topics of conversation was Jesse McFadden. Ridenbaugh agreed to wear a wire and to discuss the murder with McFadden. The troopers spent time during the interview going over the procedures of him wearing the wire. On the night of August 12, 2005, Ridenbaugh did in fact wear a wire during his interactions with Jesse McFadden. He wore the wire again on two more occasions. He was also given a cell phone to contact the troopers.

_____

[5] Trooper Powell testified the interview took place in the "Crime Unit", a room "probably 24 feet wide and some 30 feet long, a couple of desks and so forth in there." *See* N.T. PCRA Hearing at 71. Additionally, "You can leave by just pushing the door, but to get in you have to have somebody push the button." *Id*.

With Jesse McFadden being the primary subject of the interview it is reasonable to conclude that Ridenbaugh was present at the barracks as a witness and not as a suspect. He was working with the troopers in the general investigation and specifically their investigation of Jesse McFadden.

Approximately forty one minutes of the August 12, 2005 interview was recorded. The first question Trooper Felmlee asked Ridenbaugh on the record was, "Bill you understand that you're here voluntarily?" Ridenbaugh responded, saying "That's correct." He then proceeded to give a statement to the police which strongly implicated Jesse McFadden in the murder, while reiterating that he never had left his house.

It is true Ridenbaugh had no ride to get back to his home from the barracks other than the troopers, however, at no time did Ridenbaugh refuse to answer any questions, refuse to cooperate, or communicate in any way that he wished to end the interview and be transported home. It appears from the conduct of the officers that had he made such a request, the interview would have ended and the police would have transported him back home without delay.

This court finds that Ridenbaugh was not prejudiced by attorney Vrobel's [defense counsel] failure to present a suppression motion regarding the August 12, 2005 interview because Ridenbaugh was not in custody and he would not have prevailed on his motion.

Additionally, Ridenbaugh failed to meet the prejudice prong of the test regarding the August 12, 2005 interview because he failed to demonstrate there is a reasonable probability that, but for attorney Vrobel's error, the outcome of the trial would have been different. Ridenbaugh has failed to point to any statement he gave during the August 12, 2005 interview that prejudiced him at trial. In fact, the record shows that at the interview he was working with the troopers in their investigation of Jesse McFadden. He agreed to wear a wire to obtain additional incriminating evidence against McFadden. Any statement he did give at the August 12, 2005 interview affirmed that Jesse McFadden committed the murder on his own while Ridenbaugh remained at his residence. Having failed to meet the prejudice

prong of the test for ineffectiveness, Ridenbaugh's claim regarding the August 12, 2005 interview fails.

PCRA Court Opinion, 5/10/2013 at 11-14.

Based on our review, the record fully supports the PCRA court's findings and, in light of the standard set forth in **Smith**, **supra**, we discern no error of law in the determination that Ridenbaugh was not entitled to relief on this claim. We agree with the PCRA court's findings that under the totality of the circumstances, it appears that the August 12, 2005 meeting was in the nature of an interview with a cooperating witness, and further, Ridenbaugh has pointed to no statement from the August 12, 2005 interview that prejudiced him a trial.

Regarding the September 1, 2005, interview, Ridenbaugh admits he was given the **Miranda** warnings and signed a waiver. However, he claims that because he had been appointed counsel for a separate (drug) crime, the police were required to question him only in the presence of counsel and therefore, the signed waiver was invalid. This claim would have arguable merit if Ridenbaugh had, at any time, claimed he had invoked his Fifth Amendment right to counsel in his drug case. Because he did not, he cannot prevail.

Here, the PCRA court correctly notes the difference between a person's Fifth Amendment right to counsel and a Sixth Amendment right to counsel,[6] and the import of that difference to the outcome of this matter. By way of background, at the time of the September 1, 2005 interview, Ridenbaugh had been arrested and was in custody on drug charges that were unrelated to the murder charge instantly at issue. Pursuant to the Sixth Amendment, Ridenbaugh had been appointed counsel to defend him against the drug charges. However, because he had not been arrested for murder, no Sixth Amendment right to counsel attached to that case. Further, the PCRA court correctly notes that a Sixth Amendment right to counsel is offense specific, and cannot be invoked once for all future prosecutions. **See Commonwealth v. Wyatt**, 669 A.2d 954, 956 (Pa. Super. 1996) *citing* **United States v. Gouveia**, 467 U.S. 180, 104 S.Ct. 2922 (1984). It is undenied that Ridenbaugh invoked his Sixth Amendment right to counsel for his drug charge. However, he had no Sixth Amendment right to counsel for the murder charge because he had not been charged with that crime. Therefore, the fact that Ridenbaugh was represented by counsel in a different matter is not, by itself, helpful to Ridenbaugh.

_____

[6] The Fifth Amendment right to counsel is based upon due process rights and the prohibition against compelled self-incrimination. The Sixth Amendment right to counsel is based on the explicit language that "In all criminal prosecutions the accused shall have the right…to have the Assistance of Counsel for his defense." U.S.Const., Amend VI.

Therefore, the **Miranda** waiver must be examined under the Fifth Amendment. A person's Fifth Amendment right to counsel is not offense specific. **Wyatt**, **supra**, 669 A.2d at 957, *citing* **Arizona v. Roberson**, 486 U.S. 675 (1988). Further, **Wyatt** acknowledges that once a person invokes his Fifth Amendment right to counsel, the police may not initiate any further questioning of the defendant in the absence of counsel. **Id**., *citing* **Edwards v. Arizona**, 451 U.S. 477, 101 S.Ct. 1880 (1981). **Wyatt** holds that once a person invokes his Fifth Amendment right to counsel, that invocation operates, pursuant to **Roberson**, to prevent the police from questioning a defendant on any offense unless counsel is present. **Id**. Accordingly, for Ridenbaugh to prevail on this claim, he was required to demonstrate that he had invoked his Fifth Amendment right to counsel in his drug case. Ridenbaugh never asserted, much less proved, that he had invoked his Fifth Amendment right to counsel in his drug case. Therefore, the fact that he was represented in the drug case, without ever invoking his Fifth Amendment rights in that case, did not prevent the troopers from questioning him regarding the murder. Because the troopers were entitled to initiate questioning, Ridenbaugh was entitled to waive his **Miranda** rights without counsel being present.

Accordingly, we agree with the PCRA court that the waiver was valid and Ridenbaugh would not have prevailed in an attempt to suppress any statements or other evidence that was a product of the September 1, 2005,

interview. Counsel cannot be ineffective for failing to file a meritless motion. ***Wright***, ***supra***.

Ridenbaugh's final two issues were impliedly rejected in the prior appeal;[7] however, we will briefly discuss them.

Ridenbaugh argues that trial counsel was ineffective for failing to object to hearsay evidence presented at trial. However, the PCRA court noted in both the order denying the petition without a hearing, 3/11/2011, and in its Pa.R.A.P. 1925(a) Opinion, 5/10/2011, that Ridenbaugh failed to identify any specific hearsay statement. PCRA Court Opinion at 2. Additionally, the PCRA court reviewed the notes of testimony and failed to locate any such objectionable testimony. The PCRA court speculated Ridenbaugh might have been complaining about the testimony of Corporal Felmlee, who testified about what Ridenbaugh told Trooper Davis during an interview. However, Corporal Felmlee was present at that interview, and so was testifying from first-hand knowledge, not hearsay. ***Id***. The record supports this determination and Ridenbaugh is not entitled to relief on this issue.

_____

[7] In the prior appeal, the PCRA court had denied all of Ridenbaugh's claims without a hearing. A panel of this Court remanded for hearing on the two issues discussed above. That memorandum implied that the other issues were properly disposed of by the PCRA court. However, the prior decision did not expressly affirm the PCRA court on the remaining issues. Therefore, in an abundance of caution, we expressly affirm the PCRA court on the remaining issues.

Finally, Ridenbaugh claims PCRA counsel was ineffective for failing to investigate and request a hearing on the above discussed issues. However, counsel cannot be ineffective for failing to pursue meritless claims. ***See Wright***, ***supra***. ***See also, Commonwealth v. Roney***, 79 A.3d 595, 604 (Pa. 2013) (no PCRA hearing required when there are no genuine issues of material fact, defendant is not entitled to relief and no legitimate purpose would be served by a hearing).

Having determined that all issues raised by Ridenbaugh in both the initial PCRA petition and those issues addressed pursuant to the remand are meritless, we affirm the denial of PCRA relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/14/2015

- 13 -