J-S21007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN ADAMS | |
| Appellant | No. 3892 EDA 2017 |

Appeal from the Judgment of Sentence entered July 11, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0013625-2012

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 20, 2020**

Appellant, John Adams, appeals from the judgment of sentence entered on July 11, 2017 in the Court of Common Pleas of Philadelphia County following his convictions of aggravated assault and related crimes.  Appellant asserts several trial court errors including denial of his requests for a new trial and a post-sentence evidentiary hearing, rejection of claims of prosecutorial misconduct, limiting the cross-examination of a Commonwealth witness, and denial of his request for a **Kloiber**[1] instruction.  Upon review, we affirm.

The trial court provided the following factual history, supported with citations to the trial transcripts, as follows:

> On August 5, 2012, at or around 10pm, a shooting took place at 2063 Ridge Avenue, in the City and County of Philadelphia.

---

[1] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

Located at this address was The Traveler's Club, the bar of choice for the Wheels of Soul motorcycle club. Complainants Darrell Jenkins and Gregory Gordon[fn] were with others at The Traveler's as part of a repass for a friend who was a member of another motorcycle club, Jay Hawkers. Mr. Jenkins is a disabled veteran of the Marine Corps. Appellant and his girlfriend arrived at Traveler's, socialized, and played pool. A few hours after his arrival, Mr. Jenkins heard various people arguing and trying to escort Appellant out of the facility and its vicinity. Appellant grew violent whilst being ejected. There was conflicting testimony as to whether the Appellant is left or right handed. Appellant's eye became injured during the commotion, at which point his girlfriend tried to bring him to their vehicle in order to escort him to the hospital. Shots were fired while they were trying to enter their vehicle. During the first round of gunshots Gregory Gordon shouted he had been hit in the shoulder. Appellant returned to the scene, reaching into his waistband for a gun. Witnesses attempted to hold Appellant back, who then began shooting, hitting Darrell Jenkins in the left foot.

[Fn] Complainant Gregory Gordon was uncooperative and did not testify during trial.

Following the shooting incident, both Complainants drove together to the hospital in a white SUV. Philadelphia Police Officer Wright observed their vehicle ignore stop signs and speeding, and attempted to pull them over, to which they did not comply. The Complainants continued on and pulled into the emergency bay at Presbyterian Hospital. Mr. Gordon exited the vehicle and informed the police he was shot in the shoulder, while Mr. Jenkins was brought directly into the hospital for treatment. Officer Wright noticed that the rear driver's side window was broken, and the driver's side rear tire was on its rim. Later, a shell casing was found near the vehicle. While in the hospital, both Complainants reported being shot by an unknown individual.

Philadelphia Police Officers O'Shaughnessy and Hernandez responded to a radio call report of gunshots and arrived at Traveler's Club two to three minutes after the call. Approximately thirty people remained at the scene. Witnesses reported the gunshots had come from near the Bloomberg housing development. Officers O'Shaughnessy and Hernandez left after surveying the area with negative results. When they were later informed that gunshot victims from Traveler's had been admitted

to Presbyterian, the officers returned to the club.  Three to four people remained there, with one male trying to close and lock the gate.  Officers gained entry and surveyed the scene, finding three spent shell casings, a projectile, and blood.  Officers O'Shaughnessy and Hernandez received the names of the victims from the Police Officers at the hospital and filled out the required paperwork.  They remained on scene until 11:50pm.

On August 7, 2012, Darrell Jenkins gave a statement to Detective Rocks, detailing the events of the shooting.  A confidential informant provided Detective Rocks with information implicating the Appellant.  Based on the available information, on August 9, 2012, Mr. Jenkins was shown a photo array and chose the Appellant out of the array in less than 5 seconds.  On October 26, 2012, Appellant was driving his girlfriend's car and disregarded a stop-sign.  Police Officer Celce stopped the vehicle and immediately recognized Appellant from an outstanding warrant. Officer Celce asked for identification, which Appellant did not provide.  Appellant provided a false name and number, but his correct date of birth.  As Appellant had a warrant out for his arrest, Officer Celce requested he exit the vehicle and was subsequently hand-cuffed.

Trial Court Opinion, 11/14/18 at 2-4 (citations to notes of testimony omitted).

Appellant was arrested and charged with aggravated assault, violations of the uniform firearms act, possession of an instrument of crime, simple assault, and reckless endangerment.  His first trial ended in a mistrial with a deadlocked jury.  Following an appeal to this Court, we remanded for a new trial.

On May 9, 2017, the jury returned a guilty verdict on all charges.  On July 11, 2017, the trial court sentenced Appellant to seven to fifteen years in prison, followed by five years' reporting probation.  On July 13, 2017, Appellant filed post-sentence motions requesting a new trial.  On July 21, 2017, he filed an additional post-sentence motion to dismiss based on

prosecutorial misconduct. The trial court denied both motions on October 30, 2017. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider five issues in this appeal:

A. Did the lower court err in denying [Appellant's] request for a mistrial because the Assistant District Attorney in his closing argument repeatedly called into question defense counsel's strategies and accused defense counsel of hiding evidence when, in fact, defense counsel was simply obeying the rules of court?

B. Did the lower court err in denying [Appellant] certain post-sentence discovery and relief where [Appellant] had a good-faith basis to believe that the Assistant District Attorney had a pattern and practice of accusing defense counsels [sic] of hiding evidence in his closing arguments?

C. Did the lower court err in denying [Appellant's] request for a Kloiber instruction where the Commonwealth's witness repeatedly failed to identify [Appellant]–or anyone else–as the perpetrator of the crime?

D. Did the lower court err in denying [Appellant] the right to cross examine the Commonwealth's witness on the potential sentence he faced if he violated his probation or from inquiring on which charges the witness was serving his probation?

E. Did the lower court err in denying [Appellant's] request for a new trial where the verdicts were against the weight of the evidence?

Appellant's Brief at 4-5.

Appellant first contends the trial court erred by denying his request for a mistrial. As our Court recently reiterated, our standard of review of the trial court's denial of a motion for mistrial is as follows:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when

an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Bennett*, --- A.3d ---, 2019 PA Super 363, *15 (filed December 23, 2019) (quoting *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (additional citation omitted)). As our Supreme Court has instructed, "reversible error arises from a prosecutor's comments only where the unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Reid*, 99 A.3d 470, 507 (Pa. 2014) (citation omitted).

Appellant argues that the prosecutor "repeatedly commented on defense counsel's tactics;" "accused defense counsel of using objections to hide evidence;" "told the jury that defense counsel's job is to do whatever he can to get the best result for [Appellant];" and "accused defense counsel of using leading questions [on cross-examination of the Commonwealth's witness] to hide evidence from the jury." Appellant's Brief at 21-22. The trial court considered these allegations during argument at the conclusion of closing arguments and accepted letter briefs prior to ruling on the mistrial motion. The trial court determined that the prosecutor's remarks were "right at the line." Notes of Testimony, Trial, 5/9/17, at 5. The trial court denied

the motion, but accepted and subsequently delivered the following curative instruction proposed by Appellant's counsel:

> Yesterday in closing arguments, you heard an objection in the middle of closing arguments and I do want to give you an instruction pertaining to the objection so you can have an understanding as to what occurred during the objections.
>
> In the closing remarks of the assistant district attorney[, he] suggested to you that the defense counsel [] had used objections during the trial to hide certain evidence from you and used yes or no questions to also hide evidence to do the same. In addition, during his closing arguments, the assistant district attorney suggested that the defense counsel['s] motivation in doing this was to secure a favorable result for his client and nothing more. These remarks were improper.
>
> Attorneys on both sides must object during trial when they believe that inadmissible evidence is being offered. And on cross-examination, it is expected that attorneys will ask yes or no questions. Nonetheless, all of the evidence that the assistant district attorney in his argument claimed was hidden from you was, in fact, presented to you at some point during these proceedings.
>
> I need you to understand that it is defense counsel's duty to advocate for his client and it is no different than the assistant district attorney's duty to advocate for the interest of the Commonwealth. Okay? So just like I explained in the beginning, when either counsel make an argument, it's not evidence, it's just their argument. Now, let me go forward with my final instructions.

*Id.* at 8-10. When the trial court informed counsel of the intent to deliver the curative instruction, Appellant's counsel thanked the court for agreeing to deliver the instruction. No further objection was lodged.

The trial court recognized that prosecutors have considerable latitude with their closing arguments and explained, "Here, while the comments made may have been inappropriate as they commented on the defense's strategy, they do not rise to the level of prosecutorial misconduct. No evidence

suggests that the jury was prejudiced against the Appellant, thus impacting his right to a fair and impartial trial." Trial Court Opinion, 11/14/18, at 7 (citation omitted).

Our Supreme Court has recognized that "[w]hen the trial court gives adequate cautionary instructions, declaration of a mistrial is not necessary." ***Commonwealth v. Bryant***, 67 A.3d 716, 728 (Pa. 2013) (citation omitted).

Here, we find the trial court's cautionary instruction, in the language proposed by defense counsel, cured any harm caused by the prosecutor's statements. We find no abuse of discretion in the trial court's denial of Appellant's motion for a mistrial. Therefore, Appellant's first issue fails.

Appellant's second issue is somewhat related to his first. In his second issue, he asserts trial court error for denying a post-sentence discovery motion seeking disclosure of cases in which the prosecutor presented closing arguments. Appellant's counsel explained that after filing the post-sentence motion in this case, he "serendipitously learned that the [ADA's] misconduct was not an isolated incident" but was rather a "pattern of [] rogue, improper behavior." Appellant's Brief at 26. In support of the charge, he referenced a 2015 trial in which the same prosecutor made a comment in closing argument about defense counsel "objecting conveniently." ***Id.*** at 29. Consequently, Appellant's counsel sought to inspect the prosecutor's closing arguments in other cases and requested an evidentiary hearing on the matter "to determine if a broader pattern of injustice exists." ***Id.*** at 30.

The trial court denied the motion, noting that "Appellant cites to no source of authority from which it can be discerned that Appellant has this right. Appellant simply points to one instance in which the [ADA] also mentioned objections during testimony in his closing argument, and asserts that this illustrated a pattern." Trial Court Opinion, 11/14/18, at 6. Regardless, as reflected above, the trial court determined that the prosecutor's remarks in the instant case did "not rise to the level of misconduct warranting a new trial. Therefore, the court did not err in denying Appellant's motion for an evidentiary hearing and discovery." *Id.* We agree. Appellant's second issue fails for lack of merit.

Appellant next argues the trial court erred in denying his request for a *Kloiber* instruction, contending the Commonwealth's witness, Darrell Jenkins, "repeatedly failed to identify [Appellant]—or anyone else—as the perpetrator of the crime." Appellant's Brief at 30. As this Court explained in *Commonwealth v. Sanders*, 42 A.3d 325 (Pa. Super. 2012), "[a] *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Id.* at 332 (citing *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010)). "We evaluate whether a *Kloiber* instruction is necessary under an abuse of discretion standard." *Id.*

at 332-33 (citing **Commonwealth v. Jones**, 954 A.2d 1194, 1198 (Pa. Super. 2008)).

Appellant suggests Jenkins was confused when he initially identified Appellant from a photo array, refused to make an in-court identification of Appellant, and qualified his identification of Appellant on other instances. Appellants' Brief at 33-34. However, as the Commonwealth counters, Jenkins identified Appellant as the person who shot **Gregory Gordon**. Any equivocation on Jenkins' part to identifying Appellant as the person who shot **Jenkins** was irrelevant as the charges Appellant faced related to the shooting of Gordon only. As the Commonwealth notes:

> Mr. Jenkins confirmed that [Appellant] was the person he saw getting escorted out of the motorcycle club, the person who returned to the club with a gun, and the person who was shooting when Mr. Gordon was hit. In fact, he confirmed that he was "100 percent certain that [Appellant] was the individual that came to Travelers and started shooting." In prior testimony, Mr. Jenkins confirmed that he was "near positive" and "positive" that "the male that was shooting inside the park[ing] lot . . . is the same person that was kicked out of the club earlier."

Commonwealth Brief at 18 (citations to notes of testimony omitted).

Appellant also complains that Jenkins refused to identify Appellant at the preliminary hearing and at Appellant's first trial. However, the "failure" to identify Appellant on those occasions was explained by Jenkins when he testified about his post-traumatic stress disorder, his inability "to face the fact at the time," and his fear of looking directly at Appellant in court. **Id.** at 20 (citations to notes of testimony omitted). As Jenkins testified:

I'm sitting up here and going through a lot of emotion about the situation. It's kind of hard to be in the same room with someone that tried to take your life. It was hard to even look in that direction during these courtrooms, because I was afraid of myself of how I would react. . . . So last time I was sitting here, I was saying that I'm not positive because I didn't—I can't really look at him. I can't really look at him. But now it's hard for me right now to look at him knowing it's the same guy that's in this courtroom with me. So I apologize. But I'm a hundred percent sure I know what I seen that night.

Notes of Testimony, Trial, 5/5/17, at 93-94. As the Commonwealth argues, "Mr. Jenkins' prior refusal to identify [Appellant] in court based on his fear of facing him in person did not change his ability to observe [Appellant] during Mr. Gordon's shooting." Commonwealth Brief at 21.

Here, the trial court determined, "Jenkins was able to see Appellant clearly and saw him multiple times; he did not fail to identify him previously and also identified Appellant with 100% certainty. Based on the facts presented in testimony, there was no need for a cautionary instruction because Jenkins' identification was not unreliable." Trial Court Opinion, 11/14/18, at 11.

Based on our review of the record, we agree with the trial court's assessment of the Jenkins testimony identifying Appellant as the person who shot Gordon. Therefore, we find no abuse of discretion on the part of the court in refusing the *Kloiber* instruction. Appellant's third issue fails for lack of merit.

In his fourth issue, Appellant asserts trial court error for limiting cross-examination of Jenkins with respect to a possible sentence Jenkins might face

if he were found to be in violation of his probation. As Appellant observes, at the time of Appellant's trial, Jenkins was on probation for a 2014 case involving two violations of the uniform firearms act. While Appellant was able to question Jenkins about his probationary status, he contends he was improperly precluded from questioning Jenkins about the "duration of the sentence he could face if found in violation or the actual crimes for which he was serving the probation." Appellant's Brief at 36. Therefore, he submits, he was prevented "from fully challenging the witness's self-interest and meaningfully establishing his expectation of leniency." *Id.* at 38.

As a challenge to the admissibility of evidence, we review Appellants' issue for abuse of discretion. As this Court observed in *Commonwealth v. Melvin*, 103 A.3d 1 (Pa. Super. 2014):

> Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Hanford*, 937 A.2d 1094, 1098 (Pa. Super. 2007), appeal denied, 598 Pa. 763, 956 A.2d 432 (2008). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record. *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013), appeal denied, 87 A.3d 319 (Pa. 2014)].

*Id.* at 35.

In *Commonwealth v. Williams*, 220 A.3d 1086 (Pa. Super. 2019), this Court reiterated:

> "A witness may be impeached on cross-examination to show the witness' bias, dishonesty, or defects in h[er] ability to observe,

remember or recount the matter about which [s]he has testified." ***Commonwealth v. Gwaltney***, 497 Pa. 505, 442 A.2d 236, 241 (1982). "[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against h[er] within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." ***Commonwealth v. Evans***, 511 Pa. 214, 512 A.2d 626, 631 (1986). Our Court has held that "[a]n order placing a criminal defendant on probation does not constitute a final disposition of a criminal case against him" as probation is a conditional order "placing the defendant under the supervision and control of the court ... to be followed by a final judgment of discharge [] if the conditions of his probation are complied with [] or by a final judgment of sentence on his being brought before the court following a violation of the terms of his probation[.]" ***Commonwealth v. Buksa***, 440 Pa. Super. 305, 655 A.2d 576, 581 (1995) (citation omitted).

***Id.*** at 1093 (alterations in original)

A review of the trial transcript reveals that the prosecution raised the issue of Jenkins' probationary status with the court in the following exchange:

Prosecutor: Your Honor, Mr. Jenkins is on probation, and I understand that's allowed to come in, however, I have an objection to bringing out what he is on probation for since it's not a crimen falsi conviction. We can frame it to just that he's on probations, and I have no objection to that.

The Court: The probation does not apply to crimen falsi?

Defense Counsel: It's a 6108 and 6106 case.[2]

Prosecutor: From 2014.

Defense Counsel: And one of the charges is a felony, punishable up to seven years in jail. I believe it's relevant that I can bring up the penalty, because that's the issue. If he's not cooperative, he could face up to seven years in jail on the 6108. . . . I think there

---

[2] 18 Pa.C.S.A. § 6108 (carrying firearms on public streets or public property in Philadelphia) and § 6106 (firearms not to be carried without a license).

- 12 -

is probative value in the fact he's facing serious gun charges where the same district attorney's office is prosecuting him.

. . .

The Court:  So wait.  You're saying because he's facing – or because he's on probation for gun charges, it's relevant to this case?

Defense Counsel:  Yes.  Absolutely.

The Court:  The fact he's on probation for his own gun charges, that's relevant to this case?

Defense Counsel:  Yes.

The Court:  No, it is not.  You can bring up the fact he's on probation, but you cannot bring up the basis or the actual terms of the crime for which he is on probation.

Defense Counsel:  Am I allowed to bring up it's a felony charge, and he has seven years of jail hanging over him?

The Court:  No.

Defense Counsel:  Am I allowed to go into the fact he's facing jail time if he's found in violation?  I think that's the whole thrust.  It goes back to **Davis** [**v.**] **Alaska**.[3]  I'm allowed to bring up his possible motives to shape his testimony one way or the other.  If I can't bring out the fact he's looking at jail time it renders the cross-examination useless.

The Court:  I mean, anyone is looking at jail time if they don't come to court; you could bring that up, the fact he could be in violation of his probation if he did not participate.

Defense Counsel:  Okay.

The Court:  But as far as what he's on probation for and what he's doing—the fact that he's on probation, you can bring that up, but

_____

[3] **Davis v. Alaska**, 415 U.S. 308 (1974).

you can't bring up what his case entails, because the charges are not relevant to what occurred and what happened.

Defense Counsel: Very well.

Notes of Testimony, Trial, 5/5/17, at 66-69.

We initially observe that the exchange began as a statement of an objection by the prosecution. Defense counsel presented his position on the scope of inquiry into Jenkins' probationary status. After discussion, the trial court explained the permissible scope of the inquiry. Defense counsel did not object but simply agreed to the parameters established by the trial court. Consequently, we question whether Appellant has preserved any objection with respect to Jenkins' probationary status. Regardless, as the Commonwealth recognizes, "[T]he court here allowed questioning relating to [Jenkins'] probation potentially being revoked. . . . The questions allowed in this case permitted the jury to draw inferences regarding Mr. Jenkins' potential bias, so there was no trial court error here." Commonwealth Brief at 26. Further:

> [Appellant] is not entitled to appellate relief because he was not prejudiced by the trial court's ruling. *See Commonwealth v. Wyatt*, 688 A.2d 710, 714 (Pa. Super. 1997) (reversal based on evidentiary ruling requires a showing of abuse of discretion as well as actual prejudice). [Appellant's] cross-examination of Mr. Jenkins more than adequately established that he was on probation and could be sent to prison for not cooperating with the Commonwealth. [Appellant] did not need to establish that Mr. Jenkins' crimes underlying his probation were for firearms offenses, or that he specifically could have gone to prison for seven years, to fully examine the witness' potential biases.

*Id.* at 26-27 (additional citations omitted).

- 14 -

Jenkins' own testimony underscores that he did not want to be present, he knew his probation could be revoked if he did not testify, and he understood it was the prosecutor's office that would recommend to the judge whether he should be sent back to jail. *See* Notes of Testimony, Trial, 5/5/17, at 89-92. Moreover, when defense counsel asked whether Jenkins knew his failure to testify could constitute a probation violation, Jenkins responded, "Yes. I would have still came. It had nothing to do with them telling me that." *Id.* at 90. Further, Jenkins was asked if he understood "that if you were to violate the terms of your probation in any way shape or form, it would be the Philadelphia District Attorney's office that would be the one who would recommend to the judgment whether or not you should go back to jail or not?" In response, Jenkins answered, "Yes. But what does that have anything to do with this case, sir?" *Id.* at 91-92.

To the extent Appellant preserved this issue by objection, we discern no abuse of discretion on the part of the trial court in establishing the parameters of cross-examination with respect to Jenkins' probationary status and the consequences of a probation violation. Further, we find no resulting prejudice to Appellant as a result of the trial court's ruling.

In his fifth and final issue, Appellant argues that the verdict was against the weight of evidence.

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the

evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Corvin v. Tihansky*, 184 A.3d 986, 992 (Pa. Super. 2018) (quoting *Phillips*

*v. Lock*, 86 A.3d 906, 919 (Pa. Super. 2014) (internal quotation marks and

citation omitted)). Further,

[w]e stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Id.* at 992-93 (citations omitted).

Appellant's weight claim is based on his assertions that Jenkins changed

his testimony during trial, and that video evidence established that Appellant

is left-handed while the perpetrator is right-handed. Appellant's Brief at 41.

He argues:

Instantly, the record is replete with evidence showing that Mr. Jenkins either could not identify the assailant or that he chose not to. And the actual victim of the crime never testified in any judicial proceeding. And most importantly, the evidence is clear that [Appellant] is left-handed and the perpetrator is right-handed. Considering another person is seen in the video wearing similar clothes and engaging in the same fight, the Commonwealth presented such inherently contradictory and inconclusive evidence as to shock one's sense of justice.

*Id.* at 42.

With respect to identifying Appellant as the shooter, as explained above, Jenkins did identify Appellant as the person who shot Gordon. To the extent Jenkins was reluctant to identify Appellant in earlier proceedings, Jenkins explained that his post-traumatic stress disorder was responsible for his inability to look directly at Appellant. However, from the time of his initial interview, "his picture was in my head. I seen everything. I'm telling you, I seen him that night and everything he did." Notes of Testimony, 5/5/17, at 84. He went on to explain his inability to look at Appellant. However, he did not waiver in his identification of Appellant as Gordon's shooter. *Id.* at 93-102.

With regard to issue of "handedness," while the video showed the shooter firing the gun with his right hand and showed Appellant shooting pool left-handed, the video also depicted Appellant using his right hand for other tasks, such as exchanging money and using his cell phone. As the trial court correctly recognized:

> As stated in the case relied upon by Appellant, the jury is exclusively the one to determine the credibility of witnesses, the weight, and effect of all testimony. At the trial, the Appellant's girlfriend stated at different times that the Appellant is both left and right handed. It is the responsibility of the jury to determine the credibility of witnesses and to weigh the evidence. Appellant argues the Commonwealth's evidence was self-contradictory; this is for the jury to decide and there is no evidence to suggest the jury improperly determined the credibility of the witness or weight of the evidence.

Trial Court Opinion, 11/14/18, at 5 (citations omitted).

We find no abuse of discretion on the part of the trial court for denying Appellant's motion for new trial based on the weight of the evidence. Appellant's final issue fails for lack of merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/20/2020*