J-A28007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MIR AHMAD SHAFI | : | |
| | : | |
| Appellant | : | No. 390 MDA 2025 |

Appeal from the Judgment of Sentence Entered January 17, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002570-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: MARCH 12, 2026**

Mir Ahmad Shafi appeals from the judgment of sentence imposed for his non-jury conviction for harassment by physical contact. 18 Pa.C.S. § 2709 (a)(1). He challenges the trial court's rulings limiting evidence relevant to his self-defense claim and the legal effect of those rulings. After careful review, we conclude that neither of Shafi's challenges warrants relief. Therefore, we affirm.

Police charged Shafi in October 2023 based on a reported domestic dispute with his partner Supriya Dixit. The case proceeded to a non-jury trial on January 17, 2025. Dixit and Shafi were the only witnesses.

Dixit testified that on October 4, 2023, she lived with Shafi in Carlisle, Pennsylvania, together with their three-year-old daughter. N.T., 1/17/25, at 4. Over the course of their relationship, they built up "a lot of resentment" and bickered about small things. *Id.* at 4–5. On that day, the resentment

and bickering culminated late at night, after Shafi's visiting family members had gone to bed and Dixit was in their daughter's bedroom. *Id.* at 5. In the middle of a "text fight[]" with Shafi, Dixit sent another text message asking Shafi to get a second bottle of milk for their daughter. *Id.* Shafi did not reply, so Dixit angrily went to the kitchen to prepare the bottle herself. *Id.* While preparing the bottle, Dixit "had a nasty exchange of words" with Shafi, who was seated across the open-floor-plan living space. *Id.* at 5–6.

Dixit testified that Shafi "said something about me being a prostitute," a triggering word for her. *Id.* at 6. Dixit then threw the bottle of milk at Shafi, hitting him in the head or neck. *Id.* According to Dixit, Shafi then got up, held her arm with his left hand and slapped her face multiple times with his right hand. *Id.* at 6–8. Dixit said that she got away from Shafi and went behind an armchair, where Shafi again grabbed her and slapped her "once or twice more" before Shafi's sister ran between them. *Id.* at 8–9.

Shafi cross-examined Dixit about what happened that night: Dixit estimated the distance from her to Shafi was "about 12 to 20 feet," with some furniture in between. *Id.* at 15–16. Dixit testified that she turned towards Shafi to throw the bottle but did not continue towards him because in "a matter of a second," he got up and came towards her. *Id.* at 17.

During Dixit's cross-examination, the trial court sustained an objection to a question about Dixit's past physical abuse of Shafi, although the court indicated the possibility that the matter possibly could be addressed later in the trial:

Q      Okay.  You had testified that you were kind of text fighting, and you also talked about the -- I believe the word was a toxic dynamic to your relationship?

A      Yes.

Q      Does that include prior incidents of physical abuse?

A      Yes, between us.

[The prosecutor]: I would object if we're going to get into prior incidents.  I'm not sure what it has to do with today.

THE COURT: I would tend to agree, [defense counsel].

[Defense counsel]: Your Honor, I believe the offer of proof that I can provide is I believe [Shafi] would testify that there were multiple incidents where Ms. Dixit was the aggressor.

THE COURT: I don't, again, see how that's relevant to this incident.

[Defense counsel]: It would be relevant to a justification defense in allowing him to testify as to that and cross-examine this witness as to that.  A pattern of abusive behavior does bear relevance and weight on a justification argument.

THE COURT: Well, I'm not going to let you ask her about that right now.  We can see what his testimony is, but slapping is not exactly justification.  So if that is the testimony from him, . . . we won't be getting into that.  So . . . you can keep her subject to recall after he testifies, but I'm not going to let you get into past incidents right now.  I don't possibly see how you have a self-defense argument based on the testimony we have right now[.]

*Id.* at 19–20.

Based on the trial court's ruling, Shafi did not question Dixit further about prior incidents.  Dixit was sequestered pending Shafi's testimony.

Shafi testified about the events leading up to the physical confrontation.  During Shafi's testimony, the trial court sustained several objections to Shafi testifying about past abuse in response to counsel's questions about the

present incident. After Shafi testified that he slapped Dixit based on his belief she would continue to attack him, the trial court still prohibited Shafi from mentioning any past abuse by Dixit:

> Q    So she advances. She throws the bottle. She's still advancing on you and you stood up?
>
> A    Yes, I stood up and then I -- you know, as she got closer, at that point I was just, you know, like basically swatting or like, you know -- and then I slapped her. You know, when I -- when she got within like -- I was swatting her because she came with both hands up as if she was going to continue to either pull my hair or scratch me as she's done many --
>
> THE COURT: No. We need to stop saying about things that happened before. This is one incident. It does not matter. I made a ruling and you need to follow it. So you will answer [defense counsel's] questions.

*Id.* at 31–32. Shafi testified that when he was resisting Dixit, he slapped her three times, although he was unable to "get a square slap on her." *Id.* at 33. Shafi stated that he believed "a hundred thousand percent" that Dixit's attack was going to continue and that his intent in slapping Dixit "was to stop an attack on" himself. *Id.* at 32–33.

When Shafi testified about his efforts to protect himself from Dixit, the trial court asked him about his actions on October 4, 2023. Shafi explained how, based on Dixit's previous abuse, he felt that it was necessary to slap her:

> THE COURT: Given your relative sizes, why did you smack her rather than control her, which you physically have given the impression to this Court you could do, which is what the law requires?
>
> [Shafi]: Because 150 instances of being abused has told me that there is no controlling her. I had tried to hold her hands in the past. She scratched the backs of my hand.

- 4 -

[The prosecutor]: I object.

THE COURT: I'm going to let [Dixit] respond so --

[Shafi]: In the past when I did try to hold her hands she would bend her hands and scratch me. I couldn't wear short-sleeved shirts for 2 years because I had marks on my hands from her hitting me, from her scratching me.

*Id.* at 39. The trial court further questioned Shafi about the incident, and defense counsel asked Shafi additional questions for clarification.

Following Shafi's testimony, the Commonwealth called Dixit in rebuttal. The trial court asked Dixit about her prior physical abuse of Shafi, which Dixit acknowledged:

THE COURT: Despite my best efforts to limit it, Mr. Shafi testified that he couldn't wear short-sleeved shirts for 2 years because you had scratched him and -- I'm not getting into all your past history. It's not relevant, but I want you -- since that came in, I wanted you to be able to respond to that.

[Dixit]: Yeah, it is true that we have gotten into physical altercations in the past, and it is true that I have nails so when I would hold his arms that I would scratch his arms. It's also true that I also carried physical scratches on my body, but not even comparable to how many he did. So if we want to talk about a scale then, yes, the scale is his scratches were many more than mine.

THE COURT: So his testimony was that the only reason he slapped you was he was defending himself against your attack.

[Dixit]: This is incorrect.

*Id.* at 44–45.

Dixit refuted Shafi's version of the events after Shafi slapped her. Neither the Commonwealth nor Shafi questioned Dixit further.

The trial court found Shafi guilty and sentenced him to pay the costs of prosecution. Shafi filed a timely post-sentence motion, which the trial court denied on February 21, 2025. Shafi timely appealed. Shafi and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Shafi presents two issues for review:

Did the trial court err by prohibiting cross examination of Ms. Dixit regarding her prior domestic violence against [Shafi], or presentation of the same by [Shafi] himself where such evidence was relevant to show both the reasonableness of [Shafi's] belief that he was in danger, and Ms. Dixit's character for violence and aggression?

Did the trial court improperly shift the burden away from the Commonwealth to prove beyond a reasonable doubt that [Shafi] was not acting in self-defense by not allowing him to fully and fairly present relevant evidence, both through cross of Ms. Dixit and by his own testimony?

Shafi's Brief at 4.

Shafi submits that evidence of Dixit's prior physical abuse was relevant and admissible because he presented sufficient evidence that he acted in self-defense. *Id.* at 8–9. In his first issue, Shafi argues that the trial court erred by excluding this evidence. *Id.* at 9–11. In his second issue, Shafi argues that the exclusion of this evidence improperly relieved the Commonwealth of its burden to disprove that he was acting in self-defense. *Id.* at 11–13.

In a non-jury trial, as in a trial before a jury, the trial court "has the authority to control the order and presentation of evidence" within its discretion. *Commonwealth v. Safka*, 141 A.3d 1239, 1249 (Pa. 2016) (citing Pa.R.E. 611(a)). We review a trial court's rulings excluding evidence

to determine whether the court abused its discretion. ***Commonwealth v. Douglass***, 588 A.2d 53, 58 (Pa. Super. 1991). "An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality." ***Commonwealth v. Greene***, 340 A.3d 324, 328–29 (Pa. Super. 2025) (quoting ***Commonwealth v. Walters***, 323 A.3d 151, 157 (Pa. 2024)). "Reversal based on the exclusion of evidence requires a showing of abuse of discretion *as well as a finding of actual prejudice*." ***Commonwealth v. Smith***, 808 A.2d 215, 232 (Pa. Super. 2002) (quoting ***Commonwealth v. Wyatt***, 688 A.2d 710, 714 (Pa. Super. 1997)).

By way of statutory background, a person commits "harassment when, with intent to harass, annoy or alarm another," he "strikes . . . or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. § 2709(a)(1) (as charged here). Self-defense is a justification of a defendant's use of force based on his mental state: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).[1] In a case involving only non-deadly force,

---

[1] The trial court and the Commonwealth address Shafi's issues using general principles of justification under Section 503 of the Crimes Code. To the extent that Section 505, the specific statute on self-defense, conflicts with Section 503, the general statute on justification, the special provisions of Section 505 prevail. ***See*** 1 Pa.C.S. § 1933.

the statute does not restrict the use of force based on provocation or impose a duty to retreat. *Cf.* 18 Pa.C.S. § 505(b)(2) (limiting justification for the use of deadly force).

Once there is evidence, from any source, to support a finding of self-defense, the Commonwealth must disprove at least one of the elements of this justification. ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001).

> When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* (citations omitted).

In a self-defense case, the alleged victim's "turbulent or dangerous character" can be relevant both (1) to corroborate the defendant's knowledge of the victim's character, *i.e.*, to show the defendant's belief in the necessity of force, and (2) to prove the victim's violent propensities, *i.e.*, to resolve any factual dispute about who was the first aggressor. ***Commonwealth v. Dillon***, 598 A.2d 963, 964–65 (Pa. 1991). As to the latter purpose, the rules of evidence specifically allow a criminal defendant to "offer evidence of an alleged victim's pertinent trait." Pa.R.E. 404(a)(2)(B).

Here, the trial court first excluded evidence of Dixit's prior abuse during Dixit's cross-examination. Despite Shafi's offer of proof, there was no testimony at that point in the trial that Shafi had slapped Dixit in self-defense.

The trial court thus acted within its discretion. Likewise, the trial court ruled within its discretion in preventing Shafi from giving non-responsive answers to his attorney's questions.

However, once Shafi testified that he slapped Dixit because he believed she would continue to physically harm him, self-defense was at issue. At this point, the trial court misapplied the law by preventing Shafi from explaining the basis for his belief. If Shafi never had the chance to provide this relevant evidence once self-defense was at issue, we would reverse and remand for a new trial.

Nonetheless, the trial court ultimately heard both Shafi and Dixit testify to the details of Dixit's prior abuse of Shafi. When the trial court asked Shafi to explain his decision to slap Dixit, Shafi related how he thought he would not have been able to restrain Dixit because Dixit previously scratched his hands. Over the Commonwealth's objection, Shafi described how Dixit hit him and scratched him over 150 times. The trial court questioned Dixit in rebuttal on this matter, and Dixit acknowledged that she had scratched Shafi. Because the trial court ultimately received the very evidence Shafi wished to present, we find that the earlier ruling did not prejudice Shafi. We thus deny relief as to Shafi's first issue, the evidentiary claim.

Shafi bases his second issue, the burden-shifting claim, on the same evidentiary rulings regarding Dixit's prior abuse of him. We observe that, after the trial court asked both Shafi and Dixit about Dixit's prior abuse, Shafi declined to question Dixit further. Because the trial court heard from both

witnesses about Dixit's past abuse and gave Shafi the opportunity to ask Dixit about it in rebuttal, we conclude that the trial court's evidentiary rulings did not improperly deprive Shafi of his rights or relieve the Commonwealth of its burden to disprove self-defense. To the extent that Shafi challenges the sufficiency of the evidence to disprove self-defense, we observe that the trial court remained free to credit Dixit's testimony that she was no longer attacking Shafi at the time he slapped her and could thus find beyond a reasonable doubt that Shafi did not believe slapping Dixit was necessary to protect himself. We deny relief as to Shafi's second issue and affirm his judgment of sentence.[2]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026

---

[2] Our decision addresses only the legal merit of the issues Shafi presents. It in no way condones Dixit's actions towards Shafi.